O

JS - 6

cc: order, docket, remand letter to
Los Angeles Superior Court, No. BC 486338

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TRANG, Individually, and On Behalf of Other Members of the Public Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TURBINE ENGINE COMPONENTS TECHNOLOGIES CORPORATION and DOES 1-10, Inclusive,<br><br>Defendants. | Case No. CV 12-07658 DDP (RZx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND VACATING EX PARTE APPLICATION**<br><br>[Dkt. Nos. 15 & 22] |

Presently before the court is Plaintiff Michael Trang's Motion to Remand to Superior Court of California, County of Los Angeles. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following order.

**I. Background**

Plaintiff worked as an hourly, non-exempt machinist for Turbine Engine Components Technologies ("TECT") until February 2012. (First Amended Complaint ("FAC") ¶ 23.) TECT is a parts

manufacturer. (Id. ¶ 2.) On August 8, 2012, Plaintiff, on behalf of himself and all others similarly situated, filed a class action lawsuit in Los Angeles County Superior Court against TECT. The putative class consists of:

> Any and all persons who are or were employed as an hourly, non-exempt employee, however titled, by TECT in the state of California within four years prior to the filing of the original complaint in this action until resolution of this lawsuit.

(Id. ¶ 16.)

The FAC alleges fourteen causes of action for violations of the California Labor Code and the California Business and Professions Code, including failure to pay overtime wages and wages upon termination, failure to provide meal periods or rest breaks, and unfair competition. Among those fourteen causes of action are seven under the Private Attorney General Act of 2004 ("PAGA").

On September 6, 2012, Defendant timely removed the suit to federal court under the Class Action Fairness Act of 2005 ("CAFA"). Plaintiff now brings this motion to remand, arguing that TECT has failed to prove by a preponderance of the evidence that the amount in controversy exceeds the five million dollar jurisdictional minimum for class actions based on diversity jurisdiction.

**II.  Legal Standard**

A defendant may remove a case from state court to federal court if the case could have originally been filed in federal court.  28 U.S.C. § 1441(a); see also Snow v. Ford Motor Co., 561 F.2d 787, 789 (9th Cir. 1977). CAFA, passed in 2005, amended the conditions under which class actions can be brought to federal court based on diversity jurisdiction. Under 28 U.S.C. § 1332(d), a class action can be brought in federal court if: (1) at least one

2

defendant and one plaintiff are from different states; (2) there are at least 100 class members; and (3) the amount in controversy exceeds $5,000,000. "CAFA was enacted, in part, to restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Roth v. Comerica Bank, 799 F. Supp. 2d 1107, 1115 (C.D. Cal. 2010)(internal quotations and citations omitted).

    The removal statute is strictly construed against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). The removing party bears the burden of proving federal jurisdiction. Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). This "strong presumption against removal" does not change under CAFA. Roth, 779 F. Supp. at 1115 (internal quotations omitted); Abrego Abrego v. The Dow Chemical Company Co., 443 F.3d 676, 685 (9th Cir. 2006).

    When a plaintiff does not specify an amount of damages in the complaint, "the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds" the required amount. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996). In other words, Defendant must "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." Id.; see also Gaus, 980 F.2d at 566-67 ("If it is unclear what amount of damages the plaintiff has sought . . . then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount.").

3

"[R]emoval cannot be based simply upon conclusory allegations." Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)(internal quotation marks and citation omitted).  The court may require parties to submit "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Id. See also Matheson, 319 F.3d at 1090; Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004).

**III. Discussion**

The court finds, and the parties do not dispute, that the first two elements of diversity jurisdiction under CAFA are met. First, Plaintiff alleges in his FAC that the putative class is "estimated to be greater than one hundred." (FAC ¶ 17.) Second, minimal diversity exists because Plaintiff Trang is a citizen of California, and TECT is incorporated in Delaware and has its principle place of business in Georgia or Kentucky. (Opp'n at 3:13-16.) The only disputed issue is whether TECT has met its burden of proof that the amount in controversy exceeds $5,000,000.

    A.   Amount in Controversy

Plaintiff's FAC does not specify the amount of damages. Thus, TECT has the burden of proving that it is more likely than not that damages exceed $5,000,000. TECT provided a declaration from Martha Kinsley ("Kinsley"), TECT's Human Resources Manager, in which she calculated the number of putative class members and the amount in controversy based on her "personal knowledge and [her] review and analysis of TECT's payroll and personnel records." (Kinsley Decl. ¶ 3.) Kinsley determined that the total amount in controversy reaches $14,282,563.34 excluding attorney's fees. (Kinsley Decl. ¶ 45.)

To arrive at this figure, TECT assumed a 100% violation rate. That is, Kinsley assumed that every putative class member suffered a violation of every cause of action applicable to them during every pay period.

Some courts have been willing to assume a 100% violation rate to calculate the amount in controversy. See e.g., Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010); Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). The logic behind such an assumption is that the plaintiff is the "master of the complaint," and thus the plaintiff could allege less than a 100% violation rate if he so chooses. Roth, 799 F. Supp. 2d at 1128-29.

The court agrees that a plaintiff is the master of his complaint, but finds that assuming a 100% violation rate may undermine CAFA's intent to place the burden on the removing party. "[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego, 443 F.3d at 685.  Assuming a 100% violation rate would "improperly shift the burden to [the] plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction."  Roth, 799 F. Supp. 2d at 1129; see Abrego Abrego, 443 F.3d at 685.  Moreover, "crediting speculative estimates of the amount in controversy . . . ignore[s] the strong presumption against removal jurisdiction." Roth, 799 F.Supp. 2d at 1129 (internal quotations and citations omitted).

This is consistent with Ninth Circuit's rejection of "Defendant's speculation and conjecture" as the basis of diversity

jurisdiction.[1] <u>Lowdermilk v. U.S. Bank Nat'l Ass'n</u>, 479 F.3d 994, 1002 (9th Cir. 2007). <u>See</u> <u>Roth</u>, 799 F. Supp. 2d at 1127 ("damage calculations based on variables not clearly suggested by the complaint or supported by evidence, concluding that the calculations are mere conjecture."); <u>Dupre v. Gen. Motors</u>, No. CV-10-00955, 2010 WL 3447082, at *3-4 (C.D. Cal. Aug. 27, 2010) (when a defendant assumes a 100% violation rate without presenting evidence, "equally valid assumptions could be made that result in penalty pay amounts . . . that are less than $5 million.").

To determine whether the assumption of a 100% violation rate is overly speculative here, the court will consider TECT's calculations for each cause of action.[2]

    1. <u>Cause of Action No. 2 - Meal Period Claim</u>

Under California Labor Code, an employer must provide an employee who has worked for five hours with a thirty minute meal period. If the employer fails to do so, the employee shall be paid one additional hour at her regular rate for each day the meal period was not provided. Cal. Labor Code §§ 512, 226.7. For this cause of action, Kinsley determined that the putative class members combined to work 85,463 shifts of more than five hours in the applicable four-year period. She then calculated the average rate of pay per hour for the putative class members to be between $21.30 and $24.15, depending on the year. By multiplying the average rate

---

[1] Although <u>Lowdermilk</u> was applying a "legal certainty" standard, the court deems this principle equally applicable to a "preponderance of the evidence" standard.

[2] The court will not discuss causes of action 1 (overtime claim), 6 (employee-expenses claim), and 7 (unfair-competition claim) because TECT did not calculate an amount of damages for these claims.

6

of pay by 85,463, the highest possible number of meal period violations, Kinsley calculated a total amount in controversy of $1,960,860.55 for this cause of action. (Kinsley Decl. ¶¶ 5-9; Opp'n at 7:3-19.)

TECT points out that Plaintiff in his FAC alleges that "Plaintiff and Class Members were not provided with meal periods and were not relieved of all duties during any meal periods Plaintiff and Class Members did take." (FAC ¶ 44.) TECT argues that this statement amounts to an allegation of a 100% violation rate. (Opp'n at 6:17-20.)  However, this assumption is not borne out by the rest of the FAC.  Plaintiff further alleges, less categorically, that "Plaintiff and Class Members are entitled to recover one hour of premium pay for each day in which a meal period was not provided." (FAC ¶ 46.)  Additionally, the prayer for relief calls for pay where meal periods were not provided, but it does not specify that no meal periods were provided. (FAC 24:2-3.)

At this early stage of the litigation and in the face of allegations that are ambiguous with respect to the violation rate, TECT has not offered proof to support the assertion of a 100% violation rate. Thus the calculation for this cause of action is overly speculative.

       2.   <u>Cause of Action No. 3 - Rest Period Claim</u>

Under California Labor Code § 226.7, an employee shall be compensated one hour of pay for each work day that a rest period was not provided.[3]  Kinsley uses essentially the same calculation

---

[3] The court notes that if an employee misses both a meal period and a rest period in the same day, she is entitled to two extra hours of pay for that day. <u>Marlo v. United Parcel Service</u>,
(continued...)

7

method as above to calculate the amount in controversy. She multiplied 86,427, the highest possible number of rest period violations, by the average rate of pay to reach a total of $1,982,840.79. (Kinsley Decl. ¶¶ 10-14.)

Arguing that a 100% violation rate is justified, TECT points to Plaintiff's FAC which states that Defendants violated "Plaintiff and Class [Members' rights] to take ten-minute rest periods for every four hours worked." (FAC ¶ 48.) However, in the prayer for relief, Plaintiff states that he seeks "one hour of premium pay for each day in which a required rest break was not provided." (FAC at 24:14-15.) The court disagrees with TECT's suggestion that this amounts to pleading a 100% violation rate. The relief requested is framed more narrowly. Thus, like the meal period claim, this figure is highly speculative.

### 3. Cause of Action No. 4 - Waiting Time Claim

Under Cal. Labor Code § 203, an employer is liable for waiting-time penalties in the form of continued compensation for up to thirty days. Kinsley used 14 putative members of the Waiting Time Subclass to calculate the damages, multiplying their average daily wage rate by thirty days, the maximum compensation period. (Id. ¶ 18.)

Plaintiff's FAC alleges that TECT failed, and continues to fail, to pay compensation after the putative class members left

---

[3](...continued)
Inc., 2009 WL 1258491, *7 (C.D. Cal. May 5, 2009). See also Division of Labor Standards and Enforcement Manual § 45.2.8 (2008)("No matter how many meal periods (rest period penalties are separate) are missed, only one meal period premium is imposed each day.").

8

TECT. (FAC ¶ 53.) Because Plaintiff alleges TECT has still not paid compensation, the maximum thirty day compensation period seems justified when calculating the amount in controversy. Further, Plaintiff does not dispute the damages calculation for this cause of action. Thus, TECT's calculation of $63,012.00 for this cause of action is not speculative.

        4.   <u>Cause of Action No. 5 – Wage Statement Claim</u>

If an employer knowingly and intentionally fails to provide a complete and accurate wage statement, an employee is entitled to "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period." Cal. Labor Code §§ 226(e). The total amount is not to exceed four thousand dollars. <u>Id.</u> Plaintiff alleges that TECT failed, and continues to fail, to provide Plaintiff and the Paystub Subclass Members with complete and accurate wage statements. (FAC ¶ 58.) In TECT's calculation, it assumed every wage statement for every employee was incomplete and inaccurate. (Opp'n at 11:9-10.)

Kinsley determined 64 putative Paystub Subclass Members would reach the maximum penalty of $4,000. (Kinsley Decl. ¶ 24.) This amount in controversy equals $256,000. According to Kinsley, the remaining 22 subclass members suffered violations in the amount of $46,350 ($1,050 for initial violations and $45,300 for subsequent violations). (<u>Id.</u> ¶ 25.) By TECT's calculations, the total amount in controversy for this cause of action is $302,350. (<u>Id.</u> ¶ 19.)

Whether a 100% violation rate applies depends on TECT's wage statement. The FAC alleges that "defendants intentionally failed, and continue to fail, to furnish Plaintiff and Paystub Subclass

9

Members complete and accurate wage statements upon each payment of wages." (FAC ¶ 58.) If Plaintiff is alleging that the wage statements have a formal defect, i.e. the statements fail to state the applicable hourly rate, then TECT can assume a 100% violation rate because every wage statement would carry the same defect. However, if Plaintiff is alleging that the wage statements are incomplete because of inaccurate reporting of overtime or meal periods, then a 100% violation rate would be speculative. Neither party addresses this issue. Given the lack of sufficient information and TECT's burden of proof, the court finds that a 100% violation rate is too speculative.

        5.   PAGA Claims

Under PAGA, an employee may bring a private civil action against his employer for violations of the Labor Code. Cal. Labor Code § 2699(a). The civil penalty is one hundred dollars for an initial pay period violation and two hundred dollars for every subsequent violation. Cal. Labor Code § 2699(f)(2).[4]

Under California law, courts have held that employers are not subject to heightened penalties for subsequent violations unless and until a court or commissioner notifies the employer that it is in violation of the Labor Code. Amaral v. Cintas Corp. No. 2, 78 Cal. Rptr. 3d 572, 614 (Ct. App. 2008); Amalgamated Transit Union Local 1309 v. Laidlaw Transit Serv., Inc., No. 05cv1199, 2009 WL 2448430, at *9 (S.D. Cal. Aug. 10, 2009).

---

[4] Seventy-five percent of the penalties recovered goes to the Labor and Workforce Development Agency, and the remaining 25% goes to the aggrieved employee. Cal. Labor Code § 2699(i); Brown v. Ralphs Grocery Co., 128 Cal. Rptr. 3d 854, 862.

10

From the parties' papers, it is unclear if or when TECT was put on notice that it was in violation of the Labor Code. Since TECT carries the burden of proof and has provided no evidence about when it was notified of any alleged violations, the court finds any heightened penalties unreasonable.

TECT additionally argues that Plaintiff's FAC put the heightened penalties for subsequent violations in controversy simply by quoting the applicable PAGA statute. (Opp'n at 14:18-21; Reply at 7:21-24.)  TECT, however, cannot meet its burden of proving an amount in controversy by referring only to the statute; it must point to evidence making it more likely than not that a certain amount in controversy is met.  Here, there is not sufficient evidence offered to establish heightened penalties for this cause of action.

      a.   <u>Cause of Action No. 8 - PAGA Claim for Alleged Wage Statement Violations</u>

Plaintiff brings its cause of action for incomplete and/or inaccurate wage statements under PAGA.  Here, Kinsley determined that there were 85 putative class members who received at least one wage statement for the applicable one-year period. (Kinsley Decl. ¶ 30.) Assuming a 100% violation rate and using heightened penalties for subsequent violations, she calculated damages of $889,500.[5]

---

[5] In addition, Kinsley calculated a second figure of $5,526,900 based on TECT waiving its statute of limitations defense. (Kinsley Decl. ¶ 31.) The court rejects this calculation for two reasons. First, Kinsley used the heightened PAGA penalties in her calculations. Second, it is unlikely that TECT would waive its statute of limitations defense. Although TECT cites to cases holding that an affirmative defense cannot be used to reduce the amount in controversy, <u>Scherer v. The Equitable Life Assurance Soc'y</u>, 347 F.3d 394, 397-98 (2d Cir. 2003), in this Circuit the
(continued...)

11

(Id.)  As stated above, only initial penalty levels will be used in this case. Thus, the highest amount in controversy for this claim can be $449,000, but because this rate is based on a 100% violation rate, even that amount is speculative.

      b.    <u>Cause of Action no. 9 - PAGA Claim for Alleged Waiting Time Violations</u>

Kinsley determined that 15 putative subclass members were terminated and eligible for PAGA penalties. (Kinsley Decl. ¶ 33.) She calculated $1,500 in controversy based upon single PAGA violation to each of the 15 putative Wait Time Subclass Members. (Kinsley Decl. ¶¶ 32-33.) The court finds this calculation to be reasonable because each member of the subclass at a minimum suffered one violation.

      c.    <u>Causes of Action No. 10, 11, 13 - PAGA Claims for Alleged Overtime Violations, Meal Period Violations, and Meal and Rest Period Violations</u>

In calculating these three causes of action, Kinsley used the heightened PAGA penalties calculation, which the court has rejected as too speculative. Using the heightened penalties, Kinsley calculated $867,800 (cause of action ten), $883,000 (cause of action eleven), and $885,400 (cause of action thirteen). Without the heightened penalties, the maximum damages would be $438,100 (cause of action ten), $449,900 (cause of action eleven), and $451,200 (cause of action thirteen).  Even these lowered amounts assume a 100% violation rate and are therefore too speculative.

---

[5](...continued)
statute of limitations should be considered in determining the amount in controversy.  <u>See</u> <u>Riggins v. Riggins</u>, 415 F.2d 1259, 1261-62 (9th Cir. 1969).

         d. <u>Cause of Action No. 12 - PAGA Claim for Alleged Wage-Order Violations</u>

TECT alleges that it is subject to PAGA penalties for alleged Wage Order violations relating to overtime, meal periods, and rest periods. It asserts that the amount of controversy, at a minimum, is equal to the amount of either cause of action 10, 11, or 13. (Opp'n at 19:5-13.) The revised highest amount for either of those claims is $451,200. However, as mentioned above, the recalculated amounts are still speculative because based on the 100% violation rate.

         e. <u>Cause of Action No. 14 - PAGA Claim for Alleged Employee Expenses Violations</u>

Plaintiff alleges TECT failed to provide full compensation for business expenses. He brings this claim under PAGA. Here, Kinsley determined there were 86 putative class members. She assumed that each member suffered a minimum of one violation and thus multiplied 86 by the initial penalty of $100. The court agrees with her calculation of $8,600 for this cause of action.

    6. <u>Attorney's Fees</u>

TECT correctly asserts that attorney's fees can be included in the amount in controversy when authorized by the underlying statute. <u>Lowdermilk</u>, 479 F.3d at 1000. In common fund cases, district courts have the discretion to apply a percentage method or a lodestar approach. <u>Six Mexican Workers v. Ariz. Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990).[6] Under the percentage method,

---

[6] Common fund cases are cases where "counsel recover[s] a common fund which confers a 'substantial benefit' upon a class of beneficiaries." <u>Fischel v. Equitable Life Assurance Soc'y</u>, 307 F.3d (continued...)

13

the Ninth Circuit has established a 25% benchmark. <u>Id.</u> at 1311. Under the lodestar approach, "the court multiplies a reasonable number of hours by a reasonable hourly rate." <u>Fischel v. Equitable Life Assurance Soc'y</u>, 307 F.3d 997, 1006 (9th Cir. 2002).

The court is unable to apply a percentage method to this action. As noted above, the amount in controversy that TECT puts forth is highly speculative. There is no way of calculating 25% of an unknown amount in controversy. The amount in controversy for which TECT has met its burden of proof is only around $1.5 million dollars. Using the percentage method and the 25% benchmark, the total amount in controversy would be under two million dollars, still less than the jurisdictional requirement.

The court is also unable to apply a lodestar approach because TECT has not provided any evidence to suggest what would constitute a reasonable fee.

### B. TECT's Request for Jurisdictional Discovery

CAFA's legislative history "cautions that these jurisdictional determinations should be made largely on the basis of readily available information. Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent" of Congress in enacting CAFA. <u>Abrego Abrego v. The Dow Chemical Co.</u>, 443 F.3d 676, 692 (9th Cir. 2006)(internal citations omitted). While district courts may grant additional jurisdictional discovery, it is not required. <u>Id.</u> at 691.

Here, TECT is the party with access to records indicating when the putative class members worked and whether or not they were

---

[6](...continued)
997, 1006 (9th Cir. 2002).

14

provided overtime pay, meal periods, etc. Allowing for judicial discovery would be an unnecessary delay to this action because TECT already has the records necessary to show whether the amount in controversy is met. The court finds that no jurisdictional discovery is warranted.

## IV. Conclusion

While it is conceivable that the amount in controversy exceeds $5,000,000, the removal statute is strictly construed against removal jurisdiction when the court has some remaining doubt whether the amount in controversy has been met. TECT has not met its burden of proof. Thus, the court remands the action.

For the reasons stated above, Plaintiff's Motion to Remand is GRANTED. Plaintiff's Ex Parte Application for Extension of Time to File Motion for Class Certification is vacated as moot.

IT IS SO ORDERED.

Dated: December 19, 2012

DEAN D. PREGERSON
United States District Judge

15